C.J. v State of New York

2026 NY Slip Op 02699

April 30, 2026

Appellate Division, Third Department

Mackey, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

C.J., Appellant,

v

State of New York, Respondent.

Decided and Entered:April 30, 2026

CV-24-1620

Calendar Date: March 25, 2026

Before: Garry, P.J., Reynolds Fitzgerald, Powers, Mackey And Ryba, JJ.

Sivin, Miller & Roche LLP, New York City (Edward Sivin of counsel), for appellant.

Letitia James, Attorney General, Albany (Sean P. Mix of counsel), for respondent.

[*1]

Mackey, J.

Appeal from a judgment of the Court of Claims (Richard Sise, J.), entered July 26, 2024, upon a decision of the court in favor of claimant.

In April 2017, claimant moved in the Court of Claims for permission to file a late claim for damages for injuries sustained in an incident involving three correction officers that occurred in 2016 while he was incarcerated at Elmira Correctional Facility. Specifically, claimant asserted that, after he refused to relinquish his eyeglasses as directed, three correction officers entered his cell and attacked him, choking and striking him and pushing an unknown object into his rectum. The court (Schaewe, J.) granted claimant's motion as to his claims for assault and battery, but noted that the intrusion of his rectum "clearly was not related to the furtherance of defendant's business in operating a correctional facility and d[id] not support a cause of action against defendant for sexual battery as a matter of law." Claimant did not appeal from that order.

A bifurcated trial on the issue of liability ensued, and the Court of Claims (Sise, J.) ultimately found defendant liable as to claimant's allegations related to the use of excessive force. The court declined, however, to consider his rectal intrusion allegations pursuant to the law of the case doctrine. Claimant thereafter moved to set aside the court's determination as to liability with respect to the sexually related aspect of the assault, contending that the law of the case doctrine did not apply. Defendant opposed, and the court denied the motion. Following a trial on damages, claimant was awarded $30,000 and a judgment was entered accordingly. Claimant appeals.

At the outset, we disagree with claimant and find that the Court of Claims did not err in failing to consider his allegations related to the intrusion of his rectum based upon application of the law of the case doctrine in view of the court's earlier determination on claimant's motion for permission to file a late claim (see Deutsche Bank Natl. Trust Co. v Zatari, 220 AD3d 1151, 1152 [3d Dept 2023]; Gulf Coast Bank & Trust Co. v Virgil Resort Funding Group, Inc., 201 AD3d 1086, 1088 [3d Dept 2022], lvs denied 38 NY3d 909 [2022], 38 NY3d 909 [2022]; see generally Court of Claims Act § 10 [6]). Nevertheless, as the order resolving claimant's motion to file a late claim is a nonfinal order that is brought up on appellate review of the final order (see generally Bonczar v American Multi-Cinema, Inc., 38 NY3d 1023, 1025-1026 [2022]), this Court is not bound by the law of the case doctrine, and we may review claimant's argument in this regard and address the merits (see CPLR 5501 [a] [1]; Deutsche Bank Natl. Trust Co. v Zatari, 220 AD3d at 1152; compare MTGLQ Invs., L.P. v Miciotta, 204 AD3d 1119, 1122 [3d Dept 2022]).

Claimant first contends that the Court of Claims (Schaewe, J.) erred in denying that part of his motion for permission to file a late claim based upon allegations that correction officers [*2]had inserted an object into his rectum. "In determining whether to grant an application for leave to serve a late notice of claim, a court must consider various factors, including, as relevant here, whether the claim appears to be meritorious" (Felipe v State of New York, 242 AD3d 1386, 1387 [3d Dept 2025] [citations omitted]; see Calverley v State of New York, 187 AD3d 1426, 1427 [3d Dept 2020]). "A claim has the appearance of merit so long as it is not patently groundless, frivolous or legally defective, and the record as a whole gives reasonable cause to believe that a valid cause of action exists" (Felipe v State of New York, 242 AD3d at 1387 [internal quotation marks and citations omitted]; see Grasse v State of New York, 228 AD3d 1028, 1031 [3d Dept 2024]).

Pertinent here, it is well established that, "[u]nder the doctrine of respondeat superior, an employer may be held vicariously liable for torts, including intentional torts, committed by employees acting within the scope of their employment" (M.K. v State of New York, 216 AD3d 139, 141 [3d Dept 2023] [internal quotation marks and citation omitted]; see Galloway v State of New York, 212 AD3d 965, 965-966 [3d Dept 2023]). Whether an employee acted within the scope of employment is a fact-based inquiry, for which we consider, among other factors, "the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by such an employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated (i.e., whether it was foreseeable)" (M.K. v State of New York, 216 AD3d at 141 [internal quotation marks and citations omitted]). Although sexual assault has generally been found to be "a clear departure from the scope of employment" (Doe v Heckeroth Plumbing & Heating of Woodstock, Inc., 192 AD3d 1236, 1238 [3d Dept 2021] [internal quotation marks and citations omitted]), "[t]he law is well established that intentional torts may still fall within the scope of employment, and the motivation for such conduct is not dispositive as to defendant's liability; rather, that factor is but one of several for our consideration pertaining to whether such acts were foreseeable as a natural incident of the employment" (M.K. v State of New York, 216 AD3d at 143 [internal quotation marks and citations omitted]).

In reviewing claimant's motion for permission to file a late claim, the Court of Claims noted that defendant did not contradict or deny claimant's account of the events giving rise to his claims. According to claimant, in March 2016 he was housed in protective custody at Elmira Correctional Facility. Shortly before the underlying incident, he was approached by a correction officer who informed him that another incarcerated individual had accused claimant of taking his eyeglasses. Claimant denied [*3]the allegation and instead insisted that his eyeglasses were his own. A few days later, the correction officer again demanded that claimant give him the eyeglasses and, after claimant refused, claimant informed two other correction officers that he would file a grievance if this treatment continued. Later that same evening, claimant alleged that three correction officers entered his cell, punched him in the face and pushed his face into the cell wall. The officers then choked claimant, pulled his pants down and shoved an unknown object into his rectum. The officers then "slammed" claimant onto the floor and told him that, "if [he] moved[,] things would go 'from worse to dead.' " Claimant soon thereafter experienced "heavy bleeding" from his rectum and reported his injuries to the facility's nurse. According to claimant, soon after, a correction officer threatened him and told him not to report the assault or else he would make claimant's "life a living hell." Claimant was thereafter transported to a hospital where he received treatment.

The motivation underlying the correction officers' conduct is at the core of this dispute and, notwithstanding the abhorrent nature of such conduct, the foregoing undisputed allegations demonstrate that the officers' actions were precipitated by claimant's refusal to comply with their demands related to resolving a property dispute between incarcerated individuals. It is significant that applicable directives instruct correction officers that they may apply "only such degree of [physical] force as is reasonably required" and that an officer "shall not lay hands on or strike an [incarcerated individual] unless the employee reasonably believes that the physical force to be used is reasonably necessary . . . to enforce compliance with a lawful direction" (7 NYCRR 251-1.2 [b], [d]). That the Correction Law further provides that "[n]o incarcerated individual in the care or custody of the department shall be subjected to degrading treatment" in the enforcement of discipline within correctional facilities (Correction Law § 137 [5]) is further evidence that "the potential for such conduct is precisely that which was foreseen" in the crafting of warnings and instructions to correction officers related to the execution of their disciplinary duties (M.K. v State of New York, 216 AD3d at 144). As correction officers may employ force under certain circumstances, including to enforce an incarcerated individual's compliance, the sexually related humiliation tactics of the correction officers here, though "clearly cross[ing] the line of sanctioned conduct," cannot be "readily divorced" from the officers' employment duties to force claimant's compliance with direct orders (Galloway v State of New York, 212 AD3d at 968 [internal quotation marks and citation omitted]; accord M.K. v State of New York, 216 AD3d at 144). Accordingly, the Court of Claims abused its discretion in disallowing claimant to proceed as to that part of his claim [*4]based on allegations of sexually related conduct.

In view of our determination and the extensive trial testimony regarding the rectal intrusion, to which defendant did not object, we turn to the issue of liability. When reviewing a nonjury verdict, "this Court independently assesses the weight of the evidence and grants judgment warranted by the record, giving due deference to the trial court's determinations of witness credibility unless such findings are contrary to a fair interpretation of the evidence" (Galloway v State of New York, 212 AD3d at 966 [internal quotation marks and citations omitted]; see M.K. v State of New York, 216 AD3d at 141).

At trial on the issue of liability, claimant's testimony echoed the aforementioned undisputed allegations. Notably, the testimony of a nurse who treated claimant at the hospital confirmed that a rectal examination revealed the presence of blood. Claimant further explained that, after he refused to relinquish the requested eyeglasses, one of the correction officers told him, "so we're going to do this the hard way." Later that night, when three officers entered his cell and the attack began, claimant stated that he was told to "shut up or it's going to get worse." When he continued to struggle, an officer said, "didn't I tell you to shut up?" and claimant then felt his pants being pulled down, followed by several "sharp pains" in his rectum. Thereafter, as claimant waited to be transported to the hospital for his injuries, an officer approached him and said, "all you had to do was give the glasses up." The two correction officers who testified at trial and wholly denied the allegations against them were found by the Court of Claims (Sise, J.) to be "completely incredible." In contrast, the court found claimant's account of events to be "wholly credible," noting that his reports of the attack to several different individuals over time "remained consistent."

There is no evidence that the rectal intrusion here was for any of the officers' personal sexual gratification. Rather, the officers' statements made during and immediately following the incident, as reported by claimant and credited by the Court of Claims, reflect that the sexually related conduct here was part of an overall — albeit objectively excessive — use of force to compel claimant's compliance with a directive and, thus, was part of the officers' employment-related function to enforce discipline within the correctional facility (see Correction Law § 137 [5]; 7 NYCRR 251-1.2 [d]; Rivera v State of New York, 34 NY3d 383, 391 [2019]; M.K. v State of New York, 216 AD3d at 144). As previously discussed, the potential for such abuse of authority, if not the precise vile conduct engaged in here, is expressly addressed in the applicable instructions to correction officers in performing their employment-related disciplinary duties (see generally Correction Law § 137; 7 NYCRR 251-1.2). The record thus establishes defendant's liability as to that part [*5]of the claim for damages related to the rectal intrusion (see M.K. v State of New York, 216 AD3d at 141). Accordingly, we reverse the judgment to the extent that it excluded the same and remit for a new determination of claimant's damages not inconsistent with this Court's decision (see generally Galloway v State of New York, 212 AD3d at 969; Prashant Enters. v State of New York, 206 AD2d 729, 731-732 [3d Dept 1994]).

Garry, P.J., Reynolds Fitzgerald, Powers and Ryba, JJ., concur.

ORDERED that the judgment is modified, on the law and the facts, with costs, by reversing so much thereof as limited liability to nonsexually related conduct; liability for defendant's conduct is established as determined herein; and matter remitted to the Court of Claims for a redetermination of claimant's damages.